UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN CARY,

          Plaintiff,                  CIVIL ACTION NO. 17-cv-12862

      v.                      DISTRICT JUDGE ARTHUR J. TARNOW

TIMOTHY MOX *et al*.,            MAGISTRATE JUDGE MONA K. MAJZOUB

          Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Bryan Cary, proceeding *pro se*, filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983, against Corrections Officer Timothy Mox and the Special Activities Coordinator, a Deputy Director, and the Director of the Michigan Department of Corrections (MDOC) on August 22, 2017, claiming violations of his First and Fourteenth Amendment rights under the United States Constitution and of Michigan's ethnic intimidation statute, Mich. Comp. Laws § 750.147b. (Docket no. 1.) David Leach has appeared in this matter as the MDOC's Special Activities Coordinator, and Heidi Washington has appeared as the Director of the MDOC. (*See* docket no. 27, docket no. 28 at 6.) To date, Plaintiff has not named the Deputy Director of the MDOC against whom he states his claims (the MDOC has three Deputy Directors (*see* docket no. 26)); therefore, Defendant "Deputy Director of MDOC" has not been served.

This matter comes before the Court on five Motions: (1) Plaintiff's Motion for Temporary Restraining Order (TRO) and Preliminary Injunction (docket no. 17); (2) Plaintiff's Motion for Joinder of Parties and Claims (docket no. 18); (3) Plaintiff's Motion for Joinder of Parties and Claims (docket no. 22); (4) Plaintiff's Motion for TRO and Preliminary Injunction

(docket no. 25); and (5) Defendants Washington and Leach's Motion to Dismiss and/or for Summary Judgment Based on Failure to Exhaust Administrative Remedies (docket no. 28).[1] Plaintiff filed two separate Responses to the Motion to Dismiss, albeit without leave of court, to which Defendants Washington and Leach replied.  (Docket nos. 29, 30, 31.)  Plaintiff then filed a Declaration and a Sur-Reply brief in opposition to the Motion to Dismiss, again, without leave of court.  (Docket nos. 33, 34.)   All pretrial matters have been referred to the undersigned for consideration. (Docket no. 19.)   The undersigned has reviewed the above-cited pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation.

## I.  RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for TRO and Preliminary Injunction (docket no. 17), Motion for Joinder of Parties and Claims (docket no. 18), Motion for Joinder of Parties and Claims (docket no. 22), and Motion for TRO and Preliminary Injunction (docket no. 25) be **DENIED**; Defendants Washington and Leach's Motion to Dismiss and/or for Summary Judgment Based on Failure to Exhaust Administrative Remedies (docket no. 28) be **GRANTED**; and Defendant Deputy Director of MDOC be **DISMISSED** from this matter pursuant to Federal Rule of Civil Procedure 4(m).

## II.  REPORT

### A.  Background

Plaintiff is currently incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan; however, the events giving rise to the Complaint allegedly occurred while he was

---

[1] Also pending before the Court is Defendants Washington and Leach's Motion to Stay Discovery (docket no. 32), which will be addressed in a text-only order issued contemporaneously with this Report and Recommendation. Plaintiff has also filed a Motion for Summary Judgment against Defendant Mox (docket no. 50), and Defendant Mox has filed a Motion to Dismiss (docket no. 52), which will be addressed at a later date.

incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan.  (*See* docket no. 1 at 1.)  As an initial matter, Plaintiff explains in the Complaint that he is a member of the religious group known as the "Native American Traditional Way" (NATW) and argues that he therefore has the absolute right to practice his religion and possess sacred items such as a medicine bag, herbs, and protection medicines.  (*Id*. at 4.)  Plaintiff asserts that he previously filed and settled three lawsuits related to the improper taking of his sacred medicine bag.  (*Id*.)  One of these lawsuits was against Deputy Warden Smith, who, on or about June 21, 2017, allegedly informed MDOC staff that Plaintiff's medicine bag and its contents were not to be touched, and if staff wanted to search it, they could have Plaintiff empty the bag, and they could then visually inspect the bag and its contents.  (*Id*. at 2.)

Nevertheless, Plaintiff alleges that on July 1, 2017, Defendant Mox, a "seasoned" corrections officer, and Corrections Officer Holshoes, a "rookie" corrections officer, shook down his cell, and Defendant Mox instructed Officer Holshoes to search Plaintiff's bag of Native American herbs.  (Docket no. 1 at 1, 2, 4.)  Plaintiff alleges that Defendant Mox knew that Plaintiff's herbs were not supposed to be touched, which is why he instructed rookie Officer Holshoes to do it.  (*Id*. at 2, 4.)  According to Plaintiff, Officer Holshoes dumped some of Plaintiff's herbs into his hand and then into the toilet.  (*Id*. at 1, 2, 4.)  Plaintiff alleges that Defendant Mox caused his herbs to be destroyed by ordering Officer Holshoes to search them. (*Id*. at 4.)

Plaintiff alleges that Defendant Mox then completed a Contraband Removal Record form for Plaintiff's bag of remaining herbs, telling Plaintiff that he was not allowed to have the herbs and that he was going to take the herbs and physically search them.  (Docket no. 1 at 2, 4.) Plaintiff asserts that he argued with Defendant Mox regarding whether he was allowed to possess

the herbs and against the taking and searching of the herbs, but Defendant Mox took them anyway, and he later admitted to physically searching them.  (*Id*.)  Plaintiff informs that Corrections Officer Heskett made Defendant Mox return the herbs to Plaintiff the next day, as Officer Heskett was aware of the settlement and knew that the herbs were not supposed to be touched.  (*Id*.)  Plaintiff alleges that Defendant Mox, by taking and physically searching Plaintiff's herbs, "desecrated [Plaintiff's] protection medicine" to the point where the herbs could no longer be used, and Plaintiff had to throw them away.  (*Id*.)  Plaintiff claims that Defendant Mox's actions violated his First Amendment right to the free exercise of religion and his Fourteenth Amendment right to the equal protection of the law.  (*Id*.)  Plaintiff also claims that Defendant Mox's actions amount to ethnic intimidation under Michigan law.  (*Id*. at 2.)

Plaintiff asserts that Defendant Mox's July 1, 2017 actions would not have occurred had the "remaining defendants" (presumably, Defendant MDOC Director Heidi Washington, Defendant Deputy Director of MDOC, and Defendant Special Activities Coordinator David Leach) not omitted the proper procedure for searching and handling Plaintiff's sacred items from the applicable written operating procedure and the Handbook of Religious Groups.  (Docket no. 1 at 4-5.)  Plaintiff alleges that the previous versions of the operating procedure and the Handbook clearly delineated the procedure for searching the items, but with no valid reason, "these defendants" extracted the proper procedure from the subsequent versions.  (*Id*.)  Plaintiff further alleges that "[t]hese defendants are at fault because their actions allow staff to act like they don't know what[']s going on, which allows them to think they can treat Plaintiff and his sacred items however they feel with out [sic] any consequences."  (*Id*. at 5.)  Plaintiff claims that Defendants' actions in this regard violated his First and Fourteenth Amendment rights.  (*Id*. at 4.)  As relief, Plaintiff seeks a preliminary and permanent injunction ordering Defendants to stop

4

physically touching medicine bags and herbs, $10,000 in compensatory damages from each defendant, and $10,000 in punitive damages from each defendant.  (*Id.* at 3.)

**B.      Law and Analysis**

*1.      Plaintiff's Motions for Joinder of Parties and Claims [18] [22]*

Plaintiff moves pursuant to Federal Rules of Civil Procedure 18 and 19 for joinder of parties and claims related to events that occurred after the July 1, 2017 incident with Defendant Mox.  (Docket nos. 18, 22.)  In the first Motion, Plaintiff explains that after he filed a grievance related to the July 1, 2017 incident, he filed another grievance on July 19, 2017 regarding the failure to instruct MDOC staff on the proper handling procedure for his sacred herbs (*see* docket no. 53-2), and he also personally approached supervisory staff and asked that staff be informed regarding the proper handling procedure of his native religious sacred objects.  Plaintiff asserts that after he did these three things, his herbs were again taken from him, and his access thereto was further restricted.

Specifically, Plaintiff alleges that Chaplain Laing went to Plaintiff's unit and told him that under MDOC Policy Directive 05.03.150 "Religious Belief and Practices of Prisoners," Plaintiff's herbs must be in the medicine bag and that any herbs outside of the bag are considered excess property and contraband.  Therefore, Chaplain Laing allegedly gave Plaintiff three options:  (1) mail the herbs home; (2) destroy the herbs; or (3) donate the herbs to charity.  According to Plaintiff, Chaplain Laing then stated that "they" would cut Plaintiff a break and let Plaintiff have Chaplain Laing hold the herbs, and he made Plaintiff agree in writing to this alternative option.  Plaintiff states that he later read the Policy, and realized that he had been lied to.  He subsequently rescinded his permission for Chaplain Laing to hold the herbs and filed a grievance.  Plaintiff asserts that he was then bullied into signing off on the grievance by Deputy

Warden Douglas Smith, who made it clear that either the chaplain was going to hold the herbs or they would be donated, destroyed, or mailed home.

Plaintiff claims that Deputy Warden Smith, Warden Stewart, and Chaplain Laing "falsified policy language in order to take and restrict the herbs."  He says that Smith and Laing told him that this was done because he "made a big deal out of it" and that the orders came from Lansing, *i.e.* Director Washington, Deputy Director McKee, and Special Activities Coordinator David Leach.  Plaintiff argues that his herbs were taken from him and restricted in "clear retaliation against him for engaging in protected conduct which was writing grievances about staff destroying his sacred objects."  And he claims that by taking this adverse action, Smith, Stewart, Laing, Washington, McKee, and Leach violated the First and Fourteenth Amendments of the Constitution.  (Docket no. 18.)

In the second Motion and in an accompanying Declaration, Plaintiff explains that on October 22, 2017, he made Chaplain Laing write a Notice of Intent to Conduct a Hearing regarding the taking of Plaintiff's herbs.  Plaintiff states that he was at the hearing on October 24, 2017, when Resident Unit Manager (RUM) King came in, immediately got an attitude, refused to let Plaintiff continue to participate in the meeting, and refused to let Plaintiff have copies of the documents related to the matter.  Plaintiff claims that RUM King's actions violated his First and Fourteenth Amendment rights and Administrative Rule 791.3310.  (Docket nos. 22, 23.)

Through the instant Motions for Joinder, Plaintiff seeks to join the above-described claims against Deputy Warden Smith, Warden Stewart, Chaplain Laing, Director Washington, Deputy Director McKee, Special Activities Coordinator David Leach, and RUM King with his claims in this matter against Defendants Mox, Washington, Deputy Director of MDOC, and Leach.  But the undersigned does not reach the merits of Plaintiff's Motions.  This is because

before the time for response and reply to both Motions had passed, and without waiting for the court to rule on the instant Motions, Plaintiff filed a new and separate lawsuit against Warden Stewart, Chaplain Laing, RUM King, Grievance Manager Richard D. Russell, Deputy Warden Smith, and four unknown staff members in Lansing, and Plaintiff's claims in that suit are nearly identical to the claims that Plaintiff seeks to join here. *See Cary v. Stewart et al.*, No. 17-cv-13632-RHC-SDD, ECF no. 1 (E.D. Mich. 2017). Plaintiff essentially mooted his Motions for Joinder by filing the new lawsuit. Accordingly, the undersigned recommends that Plaintiff's Motions for Joinder of Parties and Claims be denied.

2.      *Plaintiff's Motions for TRO and Preliminary Injunction [17] [25]*

Also pending before the court are two Motions for TRO and Preliminary Injunction filed by Plaintiff. (Docket nos. 17, 25.) Federal Rule of Civil Procedure 65 authorizes the issuance of preliminary injunctions and temporary restraining orders. The court may issue a temporary restraining order to preserve the status quo until it has had an opportunity to determine whether a preliminary injunction should issue. *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). "The issuance of preliminary injunctive relief is committed to the discretion of the district court." *El-Shabazz v. Dunn*, No. 2:05-cv-17, 2006 WL 3500621, at *10 (W.D. Mich. Dec. 4, 2006) (citing *Planned Parenthood Ass'n v. City of Cincinnati,* 822 F.2d 1390, 1393 (6th Cir. 1987)). In deciding a motion for a preliminary injunction, the court should consider whether (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable injury without the injunction; (3) the preliminary injunction will

cause substantial harm to others; and (4) the public interest will be served if the injunction issues. *Overstreet*, 305 F.3d at 573 (citation omitted). While these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Id. See also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

In the first Motion, Plaintiff asserts that in retaliation for attempting to turn in legal mail related to this case, non-party Corrections Officer Chadwell refused to let Plaintiff turn in and send the legal mail; yelled in Plaintiff's face; told numerous inmates that Plaintiff is a "snitch," "faggot," "rat," "sissy," "fuckboy," "pedophile," and a "chomo," and that Plaintiff is in prison for raping a six-year-old boy; and threatened Plaintiff with segregation and physical harm. (Docket no. 17 at 1, 3, 4, 6.)  Plaintiff further asserts that he started to file grievances, and Officer Chadwell told Plaintiff that if he didn't drop his "grievances/complaints," Plaintiff would be "set up" and that he'd "get it worse." (*Id*. at 1, 3, 6.)  Through this Motion, Plaintiff seeks a "stop order" enjoining Officer Chadwell from committing further retaliation and from entering the facility grounds until investigation of the situation is resolved. (*Id*. at 1, 3, 4.)  Plaintiff also requests that Officer Chadwell be moved to another unit. (*Id*. at 1.)

"[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (citation omitted). "This is because the purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the *movant contends he was or will be harmed through the illegality alleged in the complaint*." *Id*. (citation and internal quotation marks and alterations omitted; emphasis added). That is, "[i]f the plaintiff's claim in the motion for injunctive relief does not relate to the plaintiff's original claim in the complaint, injunctive

relief is improper." *Rayford v. Millay*, No. 1-14-00122, 2015 WL 2454673, at *1 (M.D. Tenn. May 22, 2015) (citing *De Beers Consol. Mines v. U.S.,* 325 U.S. 212, 220 (1945); *Colvin,* 605 F.3d at 299-300).

Here, Plaintiff's motion for injunctive relief against non-party Officer Chadwell is wholly unrelated to his claims in this matter. Indeed, at no point in his Complaint does Plaintiff name Officer Chadwell or mention any of the conduct alleged in the instant Motion. (*See* docket no. 1.) Plaintiff has no likelihood of succeeding on the merits of claims that he has not even asserted in the Complaint. Moreover, Plaintiff has since been transferred to a different correctional facility (*see* docket nos. 43, 58), and presumably away from the authority of Officer Chadwell, which renders Plaintiff's motion for injunctive relief against Officer Chadwell moot. For these reasons, Plaintiff's Motion for TRO and Preliminary Injunction against non-party Officer Chadwell (docket no. 17) should be denied.

Plaintiff's claims for relief in his second pending Motion for TRO and Preliminary Injunction (docket no. 25) are also, for the most part, unrelated to Plaintiff's claims asserted in the Complaint. In fact, his claims for injunctive relief in this second Motion relate directly to the claims Plaintiff raises in *Cary v. Stewart*, No. 17-cv-13632-RHC-SDD. For example, Plaintiff asserts that in addition to taking and restricting his herbs, Deputy Warden Smith, Warden Stewart, Chaplain Laing, and RUM King are now completely denying him access to the herbs and are trying to destroy them. (Docket no. 25 at 2.) As relief, Plaintiff requests that his herbs be returned and that the court restrain all MDOC staff from falsifying policy, taking the herbs, unlawfully restricting the herbs, wrongfully searching the herbs, and harassing and intimidating Plaintiff in order to get him to drop his lawsuits. (*Id*. at 1.) Notably, Plaintiff filed a substantially similar Motion for Preliminary Injunction in *Cary v. Stewart*, which is currently

pending before that court.  *Cary v. Stewart*, No. 17-cv-13632-RHC-SDD, ECF no. 27.  Because

Plaintiff's claims for injunctive relief are directly related to his claims in *Cary v. Stewart*, but not

to his claims in this matter, Plaintiff's second Motion for TRO and Preliminary Injunction

(docket no. 25) should be denied under *Colvin, supra*.

Furthermore, the court in this matter has already denied a Motion for Injunctive Relief

filed by Plaintiff in which he requested that prison staff be instructed to stop physically touching,

damaging, defacing, desecrating, and destroying prisoners' herbs and medicine bags.  (Docket

nos. 3, 42.)  And Plaintiff does not present any facts or argument in the instant Motion for TRO

and Preliminary Injunction that correct his previous failure to establish a likelihood of success on

the merits of his constitutional claims against Defendants.  (*See* docket no. 25; docket no. 42 at

4-6, 7.)  Thus, to the extent that Plaintiff's claims for injunctive relief in the instant Motion relate

to his claims in this matter, the Motion should be denied as duplicative and moot.

3. *Defendants Washington and Leach's Motion to Dismiss and/or for Summary Judgment [28]*

Defendants Washington and Leach move to dismiss and/or for summary judgment on

Plaintiff's claims in this matter on several grounds:  (1) Plaintiff has failed to exhaust his

administrative remedies under the Prison Litigation Reform Act with regard to his claims against

them; (2) Plaintiff's request for money damages is not cognizable under RLUIPA; (3) Plaintiff's

claim for money damages against them in their official capacities should be dismissed because

state officials acting in their official capacities are not subject to liability under 42 U.S.C. § 1983;

(4) Plaintiff fails to state a claim against them under Michigan's Ethnic Intimidation Statute; (5)

Plaintiff's fails to state a claim against them under the Equal Protection Clause; and (6) there is

no factual basis for any allegation that they were personally involved in the First or Fourteenth

Amendment violations alleged by Plaintiff.  (Docket no. 28.)

Specifically, with regard to their assertion that Plaintiff failed to exhaust his administrative remedies, Defendants Washington and Leach move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 28 at 4, 13-18.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most

favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

Defendants Washington and Leach argue that summary judgment in their favor is warranted for Plaintiff's failure to exhaust his administrative remedies under the Prison Litigation Reform Act because neither of them are named in a Step I grievance describing the acts alleged in the Complaint. (Docket no. 28 at 4, 13-18.) The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action. Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 regarding prisoner grievances[2] requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff. MDOC P.D. 03.02.130(V). The Step I grievance must include "the facts involving the issue being grieved (i.e., who, what when, where, why, how)," and the "[d]ates, times, places, and names of all those involved in the issue being grieved." MDOC P.D. 03.02.130(R) (emphasis in original); *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, *supra*, ("[W]e understand

---

[2] Defendants Washington and Leach attached a copy of MDOC Policy Directive 03.02.130 to their Motion. (Docket no. 28-5.)

[MDOC] policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process."). If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due." MDOC P.D. 03.02.130(BB). A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due." MDOC P.D. 03.02.130(FF). A prisoner's administrative remedies are exhausted once his complaints have been grieved through all three steps of the grievance process in compliance with the policy. MDOC P.D. 03.02.130(B).

It is not the prisoner's burden to plead or prove that he has successfully exhausted his administrative remedies in his complaint. *Jones*, 549 U.S. at 216. Rather, failure to exhaust administrative remedies is an affirmative defense, *id.*, and so Defendants carry the burden of proof on the issue, *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012). "In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles*, 678 F.3d at 455-56 (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). In such cases, "[s]ummary judgment is

appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

To support their Motion on the issue of exhaustion, Defendants Washington and Leach have submitted Plaintiff's Step III Grievance Report, which identifies all grievances that Plaintiff pursued through Step III of the grievance process between May 2009 and December 1, 2017. (Docket no. 28-2.)  Of the approximately 150 grievances listed on the report, Defendants identify two grievances, Grievance nos. JCF-17-06-1336-17G and JCF-17-07-1591-17G, as relevant to Plaintiff's claims in this matter, and they have attached the underlying documentation for those grievances to their Motion.  (Docket no. 28 at 8-9, 14, 17-18; docket no. 28-2 at 44-52.)

Plaintiff filed Grievance no. JCF-17-06-1336-17G on June 7, 2017, regarding an incident similar to the July 1, 2017 incident involving Defendant Mox.  (Docket no. 28-2 at 52.) Specifically, Plaintiff grieved Corrections Officers Futrel and Bungart and Sergeant Moss because Officer Bungart allegedly touched and tried to open his medicine bag.  As relief, Plaintiff requested that staff be instructed to "stop touching [his] medicine bag or [he] will sue again."  The Step I Response indicates that Plaintiff "was informed if staff has probable cause to look or instruct him to empty it and look into it[,] to comply."  Plaintiff and two MDOC employees signed and dated the Step I grievance form indicating that the grievance was resolved at Step I on June 21, 2017.

Nevertheless, Plaintiff filed a Step II appeal of Grievance no. JCF-17-06-1336-17G, stating his "Reason for Appeal" as follows:

> JCF OP 05.03.150 pg. #3. 5th paragraph states staff can touch my medicine bag and this is what was used to touch, open and empty my medicine bag.  The bag IS sacred and shouldn't be touched by anyone but it's [sic] owner.  The old handbook of religious groups states the prisoner empties, and desplays [sic] each item for visual inspection and opens the bag for visual inspection that['] from CFA Special Activities Coordinator.  I respectfully request this OP be changed so

> staff stop touching things sacred my 3 lawsuits settled are clear in the issue.  Staff
> shouldn't touch or take the bag. . . . I have a copy of the handbook of religious
> groups old and new – please change it, or my only resolve is to sue.

(Docket no. 28-2 at 50 (emphasis in original).)  In considering Plaintiff's Step II Appeal, MDOC

Warden Anthony Stewart summarized the "Reason for Appeal" as "Grievant reiterates Step I

complaint."  (*Id*. at 51.)  He then recited the language of OP JCF 05.03.150, recited the Step I

Response, and noted that the grievance was resolved at Step I.  Warden Stewart concluded that

the Step I Response was appropriate and considered the grievance to be resolved at Step II.

Plaintiff then filed the following Step III appeal:

> This OP violates my 1st & 14th Am Rights, change it or I'll sue I've won 3 suits on
> medicine bag issues.  STOP touching my bag and it's [sic] contents or I'll seek
> prosecution under MCL 750.147b a Felony.  Step I was resolved until staff
> touched it again after Dep. Warden Smith said not to touch it.

(*Id*. at 50.)  MDOC Grievance Manager Richard D. Russell denied the Step III appeal on the

basis that a proper decision had already been rendered below.  (*Id*. at 49.)

Plaintiff's Step II and III appeals of Grievance no. JCF-17-06-1336-17G bear some

relation to Plaintiff's claims against Defendants Washington and Leach in this matter, in that

Plaintiff challenges the language of the Operating Procedure and mentions Defendant Leach by

title.  However, the appeals do not serve to exhaust Plaintiff's administrative remedies with

regard to his claims against Defendants Washington and Leach, for procedural and substantive

reasons.  To properly exhaust his administrative remedies in accordance with MDOC policy,

Plaintiff was required to file a Step I grievance against Defendants that included their names and

detailed the facts and circumstances of their alleged misconduct.  *See* MDOC P.D. 03.02.130(R);

*Burton*, 321 F.3d at 574, *supra*.  Plaintiff, however, did not raise his issue with the Operating

Procedure until the Step II appeal. And although the MDOC addressed both the Step II and Step

III appeals, it did not address the appeals on their merits.  "To be sure, [the Sixth Circuit] has

refused to enforce procedural requirements when 'prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits.'"  *Lee v. Willey*, 789 F.3d 673, 680 (6th Cir. 2015) (quoting *Reed–Bey v. Pramstaller,* 603 F.3d 322, 325 (6th Cir. 2010)).  But that is not the case here, as the Step II and Step III Responses did not address the propriety of the Operating Procedure, but instead considered and resolved the Step II and Step III appeals based on the complaint in Plaintiff's Step I grievance and the sufficiency of the Step I Response.  Accordingly, the principle promulgated in *Reed-Bey* provides no safe harbor for Plaintiff with regard to exhaustion.  *See Lee*, 789 F.3d at 680-81.

Furthermore, Plaintiff's Step II and Step III appeals of Grievance no. JCF-17-06-1336-17G do not actually reflect his constitutional claims against Defendants Washington and Leach. In other words, Plaintiff does not grieve Defendants in the appeals for their alleged misconduct in this matter – for omitting the proper procedure for searching and handling Plaintiff's sacred items from the newer versions of the Operating Procedure or the Handbook of Religious Groups. (*See* docket no. 1 at 4-5.)  Notably, Plaintiff does not generally grieve the content of the alleged misconduct, nor does he specifically grieve Defendants for the alleged misconduct.  In fact, Plaintiff does not name Defendant Washington in either of the appeals, and to the extent that Plaintiff names Defendant Leach by title, it is only to indicate that the Special Activities Coordinator wrote the policy for searching medicine bags in the old Handbook of Religious Groups, which Plaintiff asserts is the proper policy.  Simply stated, Plaintiff's Step II and Step III appeals of Grievance no. JCF-17-06-1336-17G do not comply with MDOC grievance policy, and they did not give Defendants Washington or Leach fair notice of Plaintiff's potential claims against them.  *See Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 890 (6th Cir. 2009) (administrative remedies not exhausted where grievance did not "give the

defendants fair notice that the grievance was directed against them").  Therefore, Plaintiff did not exhaust his administrative remedies against Defendants Washington and Leach through Grievance no. JCF-17-06-1336-17G.

Plaintiff's Grievance no. JCF-17-07-1591-17G relates directly to the July 1, 2017 incident involving Defendant Mox.  (Docket no. 28-2 at 47.)  Specifically, in the Step I grievance, Plaintiff grieved Defendant Mox as well as Corrections Officers Ordaway and Horshew for shaking down his cell, taking his Native American herbs, and dumping some of his herbs in the toilet.  (*Id.*)  He also claimed that their actions constituted ethnic intimidation under MCL § 750.1476 and violated his First and Fourteenth Amendment rights.  As Defendants point out, however, nowhere in the Step I grievance (or in the Step II or III appeals thereof) does Plaintiff name Defendants Washington or Leach or mention them by title; nor does he grieve the content of his instant claims against them (the omission of language regarding the proper procedure for searching his sacred items from the newer versions of the applicable written operating procedure and the Handbook of Religious Groups).[3]  Accordingly, Plaintiff's Grievance no. JCF-17-07-1591-17G does not exhaust his administrative remedies with regard to his claims against Defendants Washington and Leach, and Defendants have met their initial summary judgment burden in this regard.

In his first Response to Defendants' Motion, Plaintiff concedes that he failed to exhaust his administrative remedies against Defendant Washington and asks that the court grant summary judgment in her favor.  (Docket no. 29 at 2, 9.)  With regard to Defendant Leach, however, Plaintiff asserts that he attempted to grieve him in his Step III appeal of Grievance no. JCF-17-07-1591-17G, for instructing Chaplain Laing and other MDOC staff to retake Plaintiff's

---

[3] The undersigned also notes that the Step III Response for this grievance was not issued until October 16, 2017, approximately two months *after* Plaintiff initiated this civil action.

herbs, but he could not do so because staff refused to provide Plaintiff with Leach's name.  (*Id.* at 2, 8.)  In his second Response and his subsequently-filed Declaration and Sur-Reply, Plaintiff asserts that he tried to file grievances against Defendants Washington and Leach for restricting his herbs on September 14, 2017 (approximately one month after he filed the Complaint in this matter), but he was on modified access at the time, and the Grievance Coordinator denied his request.[4]  (Docket nos. 30, 33, 34.)  Plaintiff claims that because the grievance process was unavailable to him as described above, he made the following ultimatum in his Step III appeal of Grievance no. JCF-17-07-1591-17G:  "Return my herbs or all parties involved will be sued." (*Id.*; *see* docket no. 28-2 at 45.)  Plaintiff asserts that this statement effectively exhausted his administrative remedies against Defendants Washington and Leach.

Plaintiff's assertion is incorrect.  The claims against Defendants Washington and Leach that Plaintiff attempted but was allegedly unable to grieve – that they restricted his herbs – are not the claims that Plaintiff asserted against them in the instant Complaint.  As the undersigned has repeatedly stated, in this matter, Plaintiff only claims that Defendants Washington and Leach violated his constitutional rights by omitting or extracting language regarding the proper procedure for searching sacred Native American items from written policies and procedures. (*See* docket no. 1 at 4-5.)  Plaintiff's claims that Defendants Washington, Leach, and others restricted his herbs are the subject of his Complaint in *Cary v. Stewart*, No. 17-cv-13632-RHC-SDD.  Accordingly, the above-quoted statement made by Plaintiff in his Step III appeal of

---

[4] "A prisoner or parolee who files an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language . . . or [who] is found guilty of misconduct for filing an unfounded grievance" may be placed on "modified access."  MDOC PD 03.02.130 (HH).  While on modified access, the prisoner is only able to obtain grievance forms from the Step I Grievance Coordinator, and only if the Step I Grievance Coordinator determines that the issue that the prisoner wants to grieve is grievable and that it otherwise complies with the MDOC's grievance policy.  MDOC PD 03.02.130 (KK).

Grievance no. JCF-17-07-1591-17G does not suffice to exhaust his administrative remedies with regard to his claims against Defendants Washington and Leach in this matter.[5]

The evidence submitted by Defendants establishes, in a manner in which no reasonable jury could disbelieve it, that Plaintiff did not properly exhaust his administrative remedies against Defendants Washington and Leach before filing this lawsuit in accordance with MDOC Policy Directive 03.02.130.  Defendants have satisfied their burden on the issue of exhaustion, and Plaintiff has not provided any affirmative evidence to the contrary.  Accordingly, there is no genuine dispute of material fact that Plaintiff did not exhaust his administrative remedies, and Defendants Washington and Leach's Motion for Summary Judgment (docket no. 28) should be granted.[6]

### 4.      Plaintiff's Claims against Defendant Deputy Director of MDOC

On September 28, 2017, the court, having determined that Plaintiff may proceed *in forma pauperis*, directed the U.S. Marshals Service to serve the appropriate papers in this case without prepayment of the costs for such service.  (Docket no. 13.)  The U.S. Marshals Service attempted service of the Complaint upon Defendant "Deputy Director of MDOC," but on October 31, 2017, the Waiver of the Service of Summons form was returned unexecuted and accompanied by a letter from the MDOC explaining that the MDOC has three Deputy Directors, and it is not clear which of them is the intended recipient.  (Docket no. 26.)  As of April 26, 2018, Plaintiff had still not named Defendant Deputy Director of MDOC, and Defendant Deputy Director of MDOC had therefore not been served.  Thus, the Court entered an Order directing Plaintiff to show cause by May 21, 2018 why Defendant Deputy Director of MDOC should not be dismissed for failure to

---

[5] The undersigned does not pass judgment regarding whether the statement suffices to exhaust his claims against Defendants Washington and Leach in *Cary v. Stewart*.

[6] Because Defendants Washington and Leach are entitled to summary judgment on the basis of exhaustion, and in the interest of judicial economy, the Court does not reach their alternative arguments for dismissal or summary judgment.

comply with Federal Rule of Civil Procedure 4(m).  (Docket no. 45.)  Plaintiff did not respond to the Order to Show Cause.

Federal Rule of Civil Procedure 4(m) establishes the time for service of the summons and complaint.  Under Rule 4(m),

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Service has not been effected on Defendant Deputy Director of MDOC within the time allotted under Rule 4(m).  To date, Plaintiff has not responded to the Court's Order to Show Cause, identified the unnamed Deputy Director of MDOC, or shown good cause to further extend the time for service.  Accordingly, it is recommended that Plaintiff's claims against Defendant Deputy Director of MDOC be dismissed for failure to comply with Federal Rule of Civil Procedure 4(m).

### D.     Conclusion

For the reasons stated herein, it is recommended that the court **DENY** Plaintiff's Motion for TRO and Preliminary Injunction (docket no. 17), Motion for Joinder of Parties and Claims (docket no. 18), Motion for Joinder of Parties and Claims (docket no. 22), and Motion for TRO and Preliminary Injunction (docket no. 25); **GRANT** Defendants Washington and Leach's Motion to Dismiss and/or for Summary Judgment Based on Failure to Exhaust Administrative Remedies (docket no. 28); and **DISMISS** Defendant Deputy Director of MDOC from this matter pursuant to Federal Rule of Civil Procedure 4(m).

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated:  August 14, 2018              s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

## __PROOF OF SERVICE__

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  August 14, 2018          <u>s/ Leanne Hosking</u>
                                  Case Manager